IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Carlynias Pettigrew, #351719,     ) | |
|                           ) | |
|            Plaintiff,       ) | |
|                            ) | Civil Action No. 2:17-cv-2894-BHH |
| v.                          ) | |
|                            ) | **ORDER** |
| Michael Stephen, Warden,     ) | |
|                            ) | |
|            Respondent.     ) | |

This matter is before the Court upon Petitioner Carlynias Pettigrew's ("Petitioner" or "Pettigrew") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to a United States Magistrate Judge for initial review. On July 30, 2018, Magistrate Judge Mary Gordon Baker filed a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Respondent's motion for summary judgment. Petitioner filed objections to the Report, and Respondent filed a reply to those objections. For the reasons set forth herein, the Court adopts the Magistrate Judge's Report and grants Respondent's motion for summary judgment.

## BACKGROUND

Petitioner is confined in the McCormick Correctional Institution of the South Carolina Department of Corrections as a result of his conviction and sentence in Florence County, South Carolina. The Florence County Grand Jury indicted Petitioner with murder in July of 2011, and attorney William Vickery Meetze represented Petitioner. On July 26, 2012, Petitioner pleaded guilty to the lesser-included offense of manslaughter before the

Honorable Craig D. Brown and received a negotiated 30-year sentence.

Petitioner timely filed a notice of appeal, and in accordance with South Carolina Appellate Court Rule 203(d)(1)(B)(iv), plea counsel wrote the South Carolina Court of Appeals and explained that he had filed the notice of appeal on Petitioner's behalf and that he had written to Petitioner on August 20, 2012, instructing him to inform the Court of any review-able issues. Petitioner did not do so, and as a result, the South Carolina Court of Appeals filed an order dismissing his appeal for failure to comply with Rule 203(d)(1)(B)(iv) on November 26, 2012. The Court of Appeals sent the remittitur to the Florence County Court of Clerk on January 9, 2013.

Petitioner filed a pro se application for post-conviction relief ("PCR") on February 5, 2013, alleging the following grounds for relief:

10.a Involuntary plea:

11.a I was told to either take the plea of (30) yrs, or get life in prison;

10.b Ineffective assistance of trial counsel;

11.b My counsel failed to do his job in many ways.

(ECF No. 9-1 at 49-54.) On February 5, 2013, Petitioner filed "An Amendment to the Post-Conviction Relief Application," in which he raises the following claims:

1. The [Applicant's] plea was the result of coercion and pressure.

2. Ineffective Assistance of Counsel: Court appointed counsel was ineffective for failing to move to quash the indictment for murder, where the indictment failed to allege the essential elements of murder such as time [and] place of death. . . .

3. Ineffective Assistance of Counsel: Court appointed counsel was ineffective by failing to do a factual and legal investigation of the circumstances surrounding the charges. The [Applicant's] court appointed counsel coerced him into a plea without doing a factual and

2

legal investigation of the circumstances and this resulted in a complete miscarriage of justice.

(ECF No. 9-1 at 55-59.)  The state filed its return on May 9, 2013.

The Honorable Edgar W. Dickson held an evidentiary hearing on October 9, 2014. Petitioner appeared at the hearing represented by attorney Jonathan D. Waller.  Petitioner testified, and the state presented testimony from plea counsel Meetze.   Both parties submitted post-hearing memoranda in support of their respective positions.   Petitioner argued in his memorandum that:

> Applicant testified that he acted in [self-defense] and that had he been aware of his right to challenge the evidence against him, including any statements made by him, he would have not plead[ed] guilty but would have instead insisted on going to trial.  Applicant contends that Mr. Meetze's failure to inform Applicant that statements made by him must be voluntary and must undergo the scrutiny of a *Jackson v. Denno* hearing prior to their admittance was ineffective.  *Shirley v. State*, 411 S.E.2d. 215 (1991).

(ECF No. 9-6.)  Judge Dickson ultimately denied relief and dismissed the PCR application with prejudice in an order filed on July 6, 2015.  Petitioner timely filed a notice of appeal. Assistant Appellate Defender Robert M. Pachak represented Petitioner in collateral appellate proceedings.  Pachak filed a *Johnson* petition for a writ of certiorari on Petitioner's behalf and petitioned to be relieved as counsel on October 20, 2015.  The *Johnson* petition presented only one issue for review: Whether Petitioner's guilty plea was entered into voluntarily and intelligently?  (ECF No. 9-9.)  On January 11, 2016, the Supreme Court received Petitioner's pro se response to the *Johnson* petition, wherein Petitioner raised the following issues:

> I.    Is there any evidence of probative value which [supports] the PCR court's conclusion that counsel was not ineffective for failing to make himself [knowledgeable] of the statutory provisions and case law of S.C. Code of Law § 16-11-410, et al. and then thereafter impart this

3

knowledge to the defendant in advising him of the options available to him.

II.   Is there any evidence of probative value which [supports] the PCR court's conclusion that the guilty plea was not unknowing, involuntary and unintelligent where trial counsel labored under an actual conflict of interest at the time the guilty plea was entered.

III.  Is there any evidence of probative value which [supports] the PCR court's conclusion that counsel was not ineffective for failing to move for suppression of one written statement and one video statement on the grounds that they were coerced and involuntary.

(ECF No. 9-10.)  On January 13, 2017, the South Carolina Supreme Court filed an order denying certiorari and granting counsel's petition to be relieved.  The remittitur was sent to the Florence County Clerk of Court on January 31, 2017.

## FACT PRESENTED AT GUILTY PLEA HEARING

Twelfth Circuit Solicitor E.L. Clements, III and Investigator Thomas McFadden of the Florence County Sheriff's Office presented the following facts during Petitioner's guilty plea hearing:

MR. CLEMENTS: Briefly, Your Honor, and Investigator McFadden is going to give you the details, Your Honor, that you need, but this happened on the 24th of January of 2011 where Mr. Pettigrew had called Mr. Hodges to come pick he [sic] and his girlfriend up and he had called late and they had some disagreement about it and then Mr. Pettigrew waited for him there in Timmonsville.  Mr. Hodges got there. They had a further disagreement and verbal disagreement and Mr. Pettigrew pulled out a gun and shot up the car and shot Mr. Hodges I think three times.  Is that correct?

INVESTIGATOR MCFADDEN: Four.

MR. CLEMENTS: Four times. He didn't run. He did after he shot him say, oh, I didn't mean to hurt you and tried . . . to render some aid, but it was far too little way too late.  But there are some other details, Your Honor.  I'll defer to Investigator McFadden on this.

. . .

4

INVESTIGATOR MCFADDEN: Well, the other part about it, I actually spoke to Mr. Pettigrew earlier that week because he was in possession of some stolen items which belonged to somebody else. We worked that out, but his name was on some pending other investigations so I actually talked to him and told him he needed to slow down and control his temper because we had several other cases pending involving a weapon. So we didn't charge him [with those crimes] after this happened because I talked to the victims and told them there was no need to charge him now because we had this going on with him, but I did speak to him.

So the night that we got to the scene, he was already out there. Then I Mirandized him. He was in the back of the car and he said he messed up. . . . I said I told you to stay calm and he said, yeah, but I done messed up now. And he did. He confessed out there on the scene. . . . I took him to the interview room and then he gave a statement, the same statement where it was a ride, something about a ride, and he called several times, but what the mix-up was it was too late. The victim wanted him to call him early; he called too late. I think the ride was either paid for I guess he was saying by cash or by marijuana, whatever the situation was, but when he got there . . . he didn't want to leave that late because he was babysitting, the victim. When he got there, he exchanged words with him. He said I told you to call me early, which you would have [seen] in the video statement after the Miranda warning, and he said just get in the car and that's when he asked the victim who he thought he was talking to. When that happened, he said he snapped. He shot several times, which when he shot him, he was backing out of the driveway.

MR. CLEMENTS: Coraygus Hodges was trying to back out of the driveway?

INVESTIGATOR MCFADDEN: He was trying to leave. He ducked. He dodged him a couple of times. He kept shooting. He got in the car. It hit the windshield of the driver's side of the car. He backed out and ended up -- he was already shot so he -- when he turned, he must be on the steering wheel so he ended up back on top of the septic tank in the yard. He did go to the window, bust the window out, snatch[ed] [the victim] out the car and told him not to die on him. He ran to the house because they already heard what was going on outside, locked the door, wouldn't let him in, but he bust[ed] the window out the house. You could hear him on 9-1-1 because they called 9-1-1 saying . . . that he shot his brother-in-law outside. He was telling them he needed some help, but it was too late after that.

Like he said, he snapped. There [were] other charges and it could have been avoided, but I guess he let his temper get the best of him. So that's why when we offered him the plea what he was offered to manslaughter instead of murder. We could have [taken] him to trial if he wanted a trial, but

the evidence was overwhelming just like his attorney said. He confessed to it on tape. He confessed at the scene. We got the weapon and then –

MR. CLEMENTS: Ballistics match[ed] up.

INVESTIGATOR MCFADDEN: Everything match[ed] up to the weapon that was out there. Then the sister brought in the phone call. There was a question about a phone [call]. I didn't know [about] the phone call. She got his phone. I let her have it back out of evidence. She uploaded and there was a voice mail from him and I guess they could say what they thought it meant. Well, when she played it, she thought it meant he never answered his phone when he was calling for the ride because it was too late, but the voice mail was [from] . . . they called the victim Boom, but instead of calling him Coraygus, he called him Boom and he said Boom, I got something for ya. So she felt if he would have checked his voice mail, he would have heard he was upset on the voice mail saying he had something for him. So when he got to the house, you could say he had whatever he had for him, but you shot him four times when he got there. So we can only assume what you had for him was I guess the killing.

(ECF No. 9-1 at 25-28.) The trial judge then questioned Petitioner. Petitioner admitted that he had heard the State's proffer; that this would be the evidence presented if he had a trial; that there was a probability that he would be convicted of voluntary manslaughter if he went to trial; and that this was the basis for his guilty plea. He also admitted his guilt to the charge. (*Id.* at 29.)

## GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner filed the instant § 2254 petition on October 26, 2017, raising the following grounds for review, taken verbatim from his petition:

**GROUND ONE:** Trial counsel was ineffective for not advising Petitioner of the valid defense pursuant to the Protection of Persons and Property Act and his right to a pretrial hearing.

**Supporting facts:** Petitioner had recounted to trial counsel the facts of his case which supported self defense and his rights pursuant to the Protection of Persons and Property Act. SC Code of Laws Section 16-11-410-450[.] Trial counsel admitted during the post conviction relief hearing that he did not

'recall ever going over that with him' when asked about the Protection of Persons and Property Act. Petitioner's rights were violated by this ineffectiveness.

**GROUND TWO:** Trial counsel was ineffective as counsel since he failed to properly advise Petitioner on the admissibility of statements making Petitioner's guilty plea unknowing and involuntary.

**Supporting facts:** Petitioner had informed trial counsel that his statements to law enforcement were coerced and violated his constitutional rights. Petitioner testified at the Post Conviction Relief hearing that he wanted a suppression hearing. Trial counsel did not properly advise Petitioner on this matter. Petitioner's rights were violated by this failure.

**GROUND THREE:** Petitioner's due process rights and his right to effective assistance of counsel were denied since he was not satisfied with trial counsel.

**Supporting facts:** Petitioner was dissatisfied with trial counsel and clearly stated this fact at the guilty plea hearing. Petitioner was denied effective assistance of counsel due to the antagonistic relationship with trial counsel. Petitioner had filed grievances against trial counsel and trial counsel should have moved to have been relieved as counsel. Petitioner's rights were violated by these failures.

**GROUND FOUR:** PCR counsel was ineffective for failing to raise objections to the Order of Dismissal by failing to file a Rule 59(e) motion.

**Supporting facts:** PCR counsel was ineffective for failing to abide by the strict PCR rules and statutes by failing to provide Petitioner with a fair and full hearing since a 59(e) motion was not filed. PCR counsel failed to correct errors and omissions in the Order of Dismissal regarding trial counsels testimony where he admitted to not advising the Petitioner of his rights pursuant to the Protection of Persons and Property Act.

(ECF No. 1.)

## STANDARDS OF REVIEW

## I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final

determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

## II.    Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III.    Habeas Corpus

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## A.    Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption

9

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. In the guilty plea context, a petitioner must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### B. Exhaustion of Remedies and Procedural Bar

In the interest of giving state courts the first opportunity to consider alleged constitutional errors in a state proceeding, relief under § 2254 may be had only after a petitioner has exhausted his state court remedies. "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *cert. denied*, 522 U.S. 833 (1997).

To exhaust a claim in state court, a person in custody has two primary means of attacking his conviction: filing a direct appeal and/or filing a PCR application under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, then counsel for the applicant must file a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application

of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. South Carolina*, 375 S.C. 407, 653 S.E.2d 266, 267 (2007); *see also Marlar v. Warden, Tyger River Correctional Inst.*, 432 F. App'x 182, 186-88 (4th Cir. May 25, 2011). "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564 (1990).

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Procedural default can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews*, 105 F.3d 907 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. *Teague,* 489 U.S. at 297-98.

### 1.    Cause and Prejudice

Nevertheless, because the requirement of exhaustion is not jurisdictional, a federal court may consider claims that have not been presented to the highest South Carolina

court with jurisdiction in very limited circumstances. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court will review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice resulting from the failure. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

"Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

In *Martinez v. Ryan*, the Supreme Court considered "whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." 566 U.S. 1, 4 (2012). The Court explained that an error by a prisoner's PCR counsel during an initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness if: (1) state law required the prisoner to wait until PCR to raise the *Strickland* claim; (2) the prisoner's underlying

*Strickland* claim is "substantial"–"which is to say that the petitioner must demonstrate that the claim has some merit"; and (3) the prisoner can establish that PCR counsel was ineffective under *Strickland*.  566 U.S. 1, 14 (2012).

### 2.    Actual Innocence

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent.  *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

### <u>ANALYSIS</u>

### I.    Ground One: Counsel's Failure to Advise Petitioner of his Rights Pursuant to the Persons and Property Act

As his first ground for relief, Petitioner contends that trial counsel was ineffective for failing to advise him of his rights pursuant to the Protection of Persons and Property Act ("PPPA"), S.C. Code § 16-11-410, *et seq.*, which Petitioner contends would have provided him with a valid defense to the charge he faced.  Respondent argued in response that the ground is procedurally defaulted because Petitioner failed to raise the ground to the PCR court; the PCR court did not make any findings as to this ground; and PCR counsel failed to file a Rule 59(e) motion to preserve the ground for appellate review.

In her Report, the Magistrate Judge considered the parties' arguments and ultimately agreed with Respondent that this ground is procedurally defaulted and that

Petitioner failed to make any showing sufficient to overcome the procedural bar. Specifically, the Magistrate Judge determined that Petitioner's reliance on *Martinez* to excuse the procedural default is unavailing, because Petitioner failed to show that the underlying ineffective assistance claim is "substantial," or in other words, that it has some merit. 566 U.S. at 14. Petitioner objects to the Magistrate Judge's findings, again arguing that *Martinez* applies to excuse the procedural default because the underlying claim is "substantial." For the following reasons, the Court finds Petitioner's objection without merit and agrees with the Magistrate Judge's analysis.

Here, as the Magistrate Judge explained, the PCR court found plea counsel's testimony to be credible and found Petitioner's testimony not to be credible. The PCR court determined that plea counsel reviewed self defense with Petitioner and explained to Petitioner why it was not a viable defense.[1] The PCR court erroneously indicated that plea counsel discussed the PPPA with Petitioner, when plea counsel actually testified that he did not discuss the PPPA with Petitioner. In his objections, Petitioner again takes issue with this factual error by the PCR court, but for the following reasons, the Court agrees with the Magistrate Judge that it is an error without an impact.

First, as the Magistrate Judge explained, the PPPA is not a defense but rather provides immunity from prosecution. *See State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 265 (2013). The South Carolina courts have determined that to be entitled to immunity under the PPPA, "a valid case of self-defense must exist, and the trial court must

---

[1] Indeed, it is clear from the plea transcript that counsel discussed with Petitioner the issue of self defense and why counsel did not believe the defense was a viable defense for Petitioner. (ECF No. 9-1 at 19-20.)

necessarily consider the elements of self-defense in determining a defendant's entitlement

to [the PPPA's] immunity." *Curry*, 752 S.E.2d 263, 266 (2013). Here, plea counsel testified

that he did not believe Petitioner had a successful claim of self-defense based on the

evidence. As the Magistrate Judge discussed:

> Mr. Meetze testified that he did not believe that the Petitioner had a
> successful claim of self-defense. Mr. Meetze testified:
>
>> Well, in our conversations leading up to trial, Mr. Pettigrew --
>> and this may be where some of the confusion is or maybe I'm
>> confused. I don't know. Mr. Pettigrew had given me many
>> times his version of what happened, and that version . . . was
>> that at one point his brother-in-law had, like, reached behind
>> him like he had a gun that he was going to get and also that,
>> when he got in his car, that initially he sort of thrust it forward
>> like he was going to run him over and that that is when Mr.
>> Pettigrew took his gun out and shot at his brother-in-law. And
>> those are just statements of what he was telling me as his
>> version of things.
>
> (Dkt. No. 9-1 at 98-99.) Yet, Mr. Meetze testified, "There was not any
> evidence to support [Petitioner's version of events]." (*Id.* at 99.) Mr. Meetze
> received and watched Petitioner's videotaped statement two or three weeks
> before trial. (*Id.*) Mr. Meetze testified that "none of [what Petitioner claimed]
> was in there." (*Id.*) Petitioner's statement "addressed the issue of his
> brother-in-law getting in the car." (*Id.*) However, Petitioner said in his
> statement to the police that the victim "was backing out." (*Id.*) Additionally,
> Petitioner's statement did not mention the victim "thrusting the car forward as
> if [the victim] was going to come and run over him." (*Id.*) When Petitioner
> claimed that he had simply forgotten to mention that in his statement, counsel
> told him, "it doesn't seem like you forgot because you did address [the victim]
> getting in the car and what he did after he got in the car. It's just that your
> statement was that he got in the car and was backing out." (*Id.*) Mr. Meetze
> told Petitioner that he did not think that self-defense was a viable defense: ". .
> . I had told him that from the start because . . . what we had in discovery did
> not paint a picture of self-defense." (*Id.* at 99-100.). Additionally, Mr. Meetze
> recognized that "any charge on self-defense would have depended on
> whether or not Mr. Pettigrew testified and what he testified to . . . ." (*Id.* at
> 100.)

(ECF No. 19 at 14-15.) The Magistrate Judge explained that Petitioner would not have had

a valid claim for immunity under the PPPA for the same reasons that counsel believed Petitioner did not have a valid self-defense claim. Indeed, Petitioner acknowledged that his statements to law enforcement did not support his current version of the crime. Thus, the Court agrees with the Magistrate Judge that Petitioner has failed to show that counsel's performance was deficient. Moreover, the Court also agrees with the Magistrate Judge that–even if counsel's performance was deficient for failing to review the PPPA with Petitioner–Petitioner cannot demonstrate prejudice because the evidence did not support a successful claim of self defense *or* immunity under the PPPA. In summary, the Court agrees with the Magistrate Judge that Petitioner is not entitled to relief on this procedurally defaulted ground because he has failed to show that the underlying ineffective assistance claim is a substantial one, and the Court overrules Petitioner's objections on this issue.

## II.    Ground Two: Counsel's Failure to Properly Advise Petitioner of his Right to a Suppression Hearing to Determine the Admissibility of Petitioner's Statements

As his second ground, Petitioner contends that counsel was ineffective for failing to properly advise him of his right to a suppression hearing to determine the admissibility of statements he made to law enforcement. Petitioner argues that counsel's failure to properly advise him on this issue rendered his guilty plea unknowing and involuntary.

In her Report, the Magistrate Judge found this ground without merit and agreed with Respondent that the PCR court's rejection of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner objects to this finding, again arguing that Petitioner advised counsel that his statements were coerced and that counsel's performance was

unquestionably deficient for failing to fully advise Petitioner about the potential suppression of those statements. The Court finds Petitioner's objection without merit for the following reasons.

First, as the Magistrate Judge pointed out in her Report, Petitioner filled out an "Affidavit of Defendant for Guilty Plea" ("Affidavit"). (ECF No. 9-1 at 36, 118-125.) In this Affidavit, Petitioner indicated that he wished to waive his right against self-incrimination, his right to a jury trial, and his right of confrontation. (*Id*. at 117.) Petitioner indicated that he understood that he was admitting the truth of the charges against him by pleading guilty, and that by pleading guilty, he was waiving any defense to the charge against him. (*Id*. at 120.) Petitioner checked "yes" when asked the following question: "You may have given an incriminating statement in this case. Do you understand that if you plead guilty you waive or give up the right to contest or challenge whether such a statement was freely and voluntarily given in accordance with your constitutional rights?" (ECF No. 9-1 at 121.)

In addition, during the guilty plea hearing, the following colloquy occurred:

THE COURT: All right. Now, you understand that when you plead guilty, you give up certain important constitutional rights. Do you understand that you have a right to a jury trial? At a jury trial, I would instruct the jury that you are presumed innocent, that you are presumed not guilty. The State would bear the burden of proving you guilty beyond a reasonable doubt. You would have the right to question any witnesses against you, as well as the right to present witnesses for your defense.

You would have the right to remain silent. If you went to trial and did not testify, I would instruct the jury that they could not hold that fact against you. **If you made any incriminating statements, you'd have a right to challenge the admissibility of those statements. Do you understand those rights?**

THE DEFENDANT: Yes, sir.

**THE COURT: Do you understand that when you plead guilty you give up**

17

**those rights?**

**THE DEFENDANT: Yes, sir.**

THE COURT: All right. Understanding your rights and understanding that when you plead guilty you give them up, how do you plead to this charge here today? Guilty or not guilty?

THE DEFENDANT: Guilty.

(ECF No. 9-1 at 13-14 (emphasis added).) Thus, Petitioner stated in writing and orally that he understood he had the right to challenge the admissibility of any incriminating statements and that he was giving up that right by pleading guilty, and he has not presented any compelling evidence to overcome the "strong presumption of verity" of the statements made during his plea hearing. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

In addition, the Court agrees with the Magistrate Judge that the PCR court's findings regarding the credibility of the witnesses and the facts surrounding Petitioner's guilty plea are not unreasonable. As the Magistrate Judge determined: "The evidence that Petitioner voluntarily and knowingly waived his rights to challenge his statements is overwhelming." (ECF No. 19 at 20-21.) Here, the Court finds no basis to disturb the Magistrate Judge's findings on this issue because the PCR court's finding that counsel was not ineffective on this point (and that Petitioner's guilty plea was knowingly and voluntarily made) was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and was not a decision based on an unreasonable determination of the facts in light of the evidence presented.

### III.   Ground Three: Petitioner's Dissatisfaction with Counsel

As his third ground for relief, Petitioner argues that he was denied his rights to due process and effective assistance of counsel because he was not satisfied with his counsel and he informed the plea court of his dissatisfaction. The Magistrate Judge thoroughly examined this claim and agreed with Respondent that the claim is procedurally defaulted and that the claim is without merit. In his objections, Petitioner reiterates his claim that he was denied the effective assistance of counsel due to their antagonistic relationship and asserts that any procedural default of the claim is excused by *Martinez*. Here again, the Court finds Petitioner's objection without merit.

As an initial matter, the Court agrees with Respondent that this claim is procedurally defaulted because it was not specifically raised as a ground. Pursuant to *Martinez*, Petitioner argues that he can demonstrate cause to excuse the procedural default, but the Court disagrees with Petitioner because the evidence does not demonstrate that Petitioner's underlying ineffective assistance claim has merit. Stated plainly, although it is clear that Petitioner was dissatisfied with his counsel, and although Petitioner filed legal grievances against counsel, a defendant does not have an absolute right to the substitution of counsel, and to warrant substitute counsel, a defendant must show "justifiable dissatisfaction" with counsel. *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994). "Justifiable dissatisfaction sufficient to merit substitution of counsel includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the client." *United States v. Smith*, 640 F/3d 580, 591 n. 4 (4th Cir. 2011) (citation and internal quotations omitted).

In his objections, Petitioner argues that counsel's failure to advise Petitioner of the PPPA and his failure to advise Petitioner about the admissibility of his statements created

a legal conflict of interest. The Fourth Circuit has indicated that "prejudice is presumed, and a petitioner is entitled to relief, if [the petitioner] shows that his counsel labored (1) under an actual conflict of interest that (2) adversely affected his representation." *James v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). Thus, even where a petitioner can show an actual conflict, "he cannot succeed on his claim unless he also can show that the conflict adversely affected the attorney's representation, such as when an attorney takes action for one client that is necessarily adverse to another, or when an attorney fails to take action for one client for fear of injuring another." *Id.* (citing *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir, 1998). As the Magistrate Judge explained, in *Woodfolk v. Maynard*, the Fourth Circuit "articulated a three-part standard for demonstrating adverse effect, which requires the defendant to (1) 'identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued,' (2) show that this strategy 'was objectively reasonable under the facts of the case known to the attorney at the time,' and (3) show 'that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.'" 857 F.3d 531, 553 (4th Cir. 2017) (quoting *United States v. Dehlinger*, 740 F.3d at 322 (4th Cir. 2014)).

In his objections, Petitioner asserts that this three-part test has been met:

> Petitioner had identified a plausible alternative defense strategy that his defense counsel might have pursued i.e., the "stand your ground defense"; the strategy was objectively reasonable since under the facts as given by Petitioner there was a potential for a "stand your ground" hearing; part of the conflict was based on Petitioner's strategy to have the defense of self defense.

(ECF No. 24 at 16.)

For the reasons set forth in the Magistrate Judge's Report, and for the reasons

20

previously set forth herein, the Court agrees with the Magistrate Judge that the PPPA was not an alternative viable defense because the evidence did not support PPPA immunity; thus, it would not have been objectively reasonable for counsel to pursue the argument.

In all, the Court finds no evidence to support a finding that counsel was operating under a legal conflict of interest or an irreconcilable conflict, or that there was a complete breakdown in communication. Because the Court agrees with the Magistrate Judge that Petitioner's underlying ineffective assistance claim is not substantial, *Martinez* does not excuse the procedural default of this claim, and Petitioner's objections on this issue are overruled.

## IV.    Ground Four: Ineffective Assistance of PCR Counsel

As a fourth ground, Petitioner argues that his PCR counsel was ineffective for failing to file a motion to reconsider the PCR court's decision under Rule 59(e) of the South Carolina Rules of Civil Procedure and thereby preserving his claims for appellate review. The Magistrate Judge found no merit to this claim because § 2254 bars substantive habeas relief based on the ineffectiveness or incompetence of counsel during federal or state collateral post-conviction proceedings. 28 U.S.C. § 2254(i). Petitioner does not raise any specific objections to the this portion of the Magistrate Judge's Report other than to state that he "relies on his argument in the Response as his objection." (ECF No. 24 at 16.)

After review, the Court agrees with the Magistrate Judge that this ground is wholly without merit. Stated plainly, the claim set forth in ground four–a freestanding claim alleging ineffective assistance of PCR counsel–is simply not cognizable on habeas corpus review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a

proceeding arising under section 2254."). Accordingly, Petitioner's objection is overruled.

## CONCLUSION

Based on the foregoing, it is hereby ordered that the Magistrate Judge's Report (ECF No. 19) is adopted in full; Petitioner's objections (ECF No. 24) are overruled; Respondent's motion for summary judgment (ECF No. 10) is granted; and this petition is dismissed with prejudice.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

September 28, 2018
Charleston, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller–El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is denied.